## Kuropatwa v. State Farm Mutual Automobile Insurance Co.

*Ross Begelman,* for plaintiff.
*Catherine Hill Kunda,* for defendant.

KANE, *J.,* December 11, 1995—Plaintiff has appealed from the entry of our order of September 19, 1995, wherein we granted the preliminary objections of the defendant State Farm Mutual Automobile Insurance Company and dismissed plaintiff's complaint.

The complaint alleges that Susan Kuropatwa suffered physical injuries as a result of an automobile accident which occurred on April 6, 1991. She received diagnosis and treatment following the accident. In March of 1994, almost three years after the accident, Ms. Kuropatwa began experiencing recurring pain in the area which was previously complained of after the accident in April of 1991. To treat the pain she returned to the offices of DiRenzo Chiropractic Center and Academy Imaging Center. Dr. DiRenzo determined that a new set of x-rays were necessary to observe any changes which might have occurred since the time of the previous x-rays in 1991. Plaintiff underwent treatments between March

16, 1994 through May 31, 1994. At various times she requested that State Farm pay the medical bills for these treatments. State Farm sent Academy Imaging Center and DiRenzo Chiropractic Center claims for initial peer review determination by Worldwide Peer Review Organization. Worldwide determined that this second set of x-rays were medically and reasonably unnecessary as were Dr. DiRenzo's treatments. Worldwide recommended that payments should not be made to Academy Imaging or Dr. DiRenzo. State Farm forwarded peer review reports to the providers and, based on such reports, payment for treatment rendered by Dr. DiRenzo and Academy Imaging was refused. Following refusal of payment, Dr. DiRenzo requested peer review reconsideration in accordance with 75 Pa.C.S. §1797(b)(2). State Farm refused payment again, now based on the conclusions of the reconsideration reports produced by Worldwide. The complaint does *not* allege that providers have demanded payment from Ms. Kuropatwa or have refused further treatment due to State Farm's nonpayment. The complaint does allege that both plaintiff and the providers have requested at various times that State Farm pay the medical bills. Plaintiff's complaint sought payment of the medical bills, attorney's fees and interest and costs on all overdue benefits as well as recovery under the Pennsylvania Bad Faith Act, 42 Pa.C.S. §8371.

Plaintiff commenced this action by filing the complaint in the Court of Common Pleas of Bucks County on April 28, 1995. State Farm filed preliminary objections to the complaint on May 24, 1995. In response to State Farm's objections, plaintiff filed a first amended complaint on June 12, 1995. State Farm filed preliminary objections to plaintiff's first amended complaint. Plaintiff and defendant both indicate the existence of a second

amended complaint believed to be filed on or about July 24, 1995. Although plaintiff apparently forwarded a copy of this second amended complaint to the defendant, the civil case docket of the Office of Prothonotary, Bucks County, indicates no such filing. The order in the instant opinion was granted on defendant's preliminary objections to the plaintiff's first amended complaint. After review of the complaint and following oral argument, we granted the defendant's preliminary objections and dismissed the complaint.

We granted State Farm's preliminary objections after concluding that plaintiff, Susan Kuropatwa, lacks standing to bring the instant action. In *Wm. Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), the Pennsylvania Supreme Court summarized the concept of standing as follows:

"[A] person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law." *Id.* at 192, 346 A.2d at 280-81. (footnotes omitted)

The requirements of the formulation of the standing test are that an interest be "substantial," "direct," "immediate" and "not a remote consequence of the judgment." An evaluation of the presence of these elements will determine whether the interest asserted renders a litigant "aggrieved."

The Supreme Court explained that to satisfy the "substantial," interest requirement, "the (plaintiff's) interest must have substance—there must be some discernible adverse effect to some interest other than the abstract

interest of all citizens in having others comply with the law." *Id.* at 195, 346 A.2d at 282. (The requirement that an interest be pecuniary, while once of independent significance, no longer is a necessary individual element.)

The additional requirement, that the interest be "direct," "simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." *Id.* at 195, 346 A.2d at 282. Finally, the remaining requirements, that the interest be "immediate" and "not a remote consequence," reflect a single concern:

"Here [the] concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it. . . . However, it is clear that the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote." *Id.* at 197, 346 A.2d at 283.

In the present case, Ms. Kuropatwa has alleged no facts which demonstrate that she has or will have a direct, immediate, and substantial interest in State Farm's denial of payment of her health care provider's bills. Plaintiff alleges only that a motor vehicle accident occurred, that she received medical treatment for injuries allegedly sustained as a result, and that State Farm denied payment of those bills. According to the amended complaint, the only parties aggrieved by the nonpayment of the medical bills are the two named providers: DiRenzo Chiropractic Center and Academy Imaging Center. Plaintiff's amended complaint fails to allege Ms. Kuropatwa was adversely affected in any manner by State Farm's nonpayment of the medical bills.

Plaintiff also has no standing to challenge decisions made pursuant to Act VI of the Pennsylvania Motor Vehicle Financial Responsibility Laws (MVFRL) 75

Pa.C.S. §1701 et seq., as amended by the Act of February 7, 1990, P.L. 11, No. 6. Act VI significantly departs from the prior no-fault law. The current statute completely removes the insured from the billing process. Specifically, section 1797(a) of the Act states:

"Providers subject to this section may not bill the insured directly but must bill the insurer for a determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer."

Additionally, section 1797(b)(7) provides:

"If it is determined by a PRO or court that a provider has provided unnecessary medical treatment . . . the provider may not collect payment for the medically unnecessary treatment. . . . If the provider has collected such payment, it must return the amount paid plus interest. . . . In no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment for the treatment."

Clearly, under Act VI, any interest that a patient would otherwise have in payment of a health care provider's medical bills, is eliminated. In fact, if a challenge is to be made to State Farm's denial of payment of medical bills, only the health care providers, who have a direct, pecuniary interest in having their bills satisfied, may allege sufficient injury to have standing to sue under these circumstances.

Additionally, plaintiff fails to allege or even suggest that the nonpayment of her medical bills prompted the health care providers to refuse future treatment of her. Moreover, these potential consequences are far too remote to award plaintiff standing to sue under Act VI.

Plaintiff's complaint also alleges that State Farm "intentionally misrepresented its intention in reviewing and considering plaintiff's medical bills" and "exercised bad faith to induce plaintiff to justifiably rely upon (State Farm's) promise to seriously consider plaintiff's claims." Plaintiff implies that she is a victim of the PRO process; that by selecting a PRO with such a repeatedly low approval rate of submitted medical claims, State Farm virtually guarantees itself of the determinations that medical treatments and services are unnecessary. In conjunction with these allegations and attempts to collect the medical bills due, plaintiff also sought attorney's fees.

In the instant action, plaintiff's amended complaint *generally* avers that State Farm made fraudulent misrepresentations relating to the coverage of plaintiff's alleged medical bills. Plaintiff's complaint, however, is devoid of any reference to dates, times, places and/or specific misrepresentations allegedly made by State Farm in denying payment of the medical bills. This generalized approach to the allegations directly contravenes Pa.R.C.P. 1019(b), which provides that all allegations of fraud and/or mistake must be "averred with particularity."

In *Bash v. Bell Telephone Co.,* 411 Pa. Super. 347, 601 A.2d 825 (1992), the court sustained the defendant's preliminary objections in the nature of a demurrer, where the plaintiff's complaint failed to state the alleged fraud with the requisite specificity. In *Wentzel v. Old Guard Insurance Co.,* 115 Dauphin Co. Rep. 18 (1995), plaintiff allegedly sustained injuries as the result of an automobile accident on June 28, 1989. Plaintiff entered into an insurance policy with defendant, prior to the 1990 amendments to the MVFRL. Plaintiff received treatment before and after the enactment of the 1990

amendments. Defendant submitted plaintiff's medical bills to a PRO, which denied payment. Thereafter, plaintiff brought an action against the insurer alleging specifically, that defendant engaged in fraudulent misrepresentation by allegedly failing to inform plaintiff about an insurer's right to use the PRO pursuant to the 1990 amendments. Defendant filed preliminary objections in the nature of a demurrer challenging plaintiff's failure to assert fraud with "particularity" as required by Pa.R.C.P. 1019(2). The court agreed holding that the defendant used the peer review appropriately, and that plaintiff did not allege sufficient facts to support a cause of action for fraud. *Id.* at 23. Thus, the court sustained defendant's preliminary objections and dismissed plaintiff's claim of fraudulent misrepresentation.

In the instant action, plaintiff avers that State Farm intentionally misrepresented its intention in reviewing and considering plaintiff's medical bills. Plaintiff, however, never avers specific or exact misrepresentations which allegedly occurred. Plaintiff failed to state a claim for fraudulent misrepresentation, as required by Pa.R.C.P. 1019(b) and case law.

Plaintiff's amended complaint also alleges that State Farm acted in "bad faith" in denying payment of the health care provider's medical bills, pursuant to Pennsylvania's "Bad Faith" statute, 42 Pa.C.S. §8371. However, the Pennsylvania Superior Court declared that such actions are not permissible under the MVFRL, as amended 75 Pa.C.S. §1797(b). *Barnum v. State Farm Mutual Automobile Insurance Co.,* 430 Pa. Super. 488, 635 A.2d 155 (1993), *reversed on other grounds,* 539 Pa. 673, 652 A.2d 1319 (1994).

In *Barnum* an insured under an automobile policy brought an action against an insurer for section 8371

punitive damages, alleging a bad faith denial of payment of medical bills. *Id.* at 494, 635 A.2d at 156. The insurer refused to pay medical bills after a peer review organization determined that the treatment was unnecessary. The Pennsylvania Superior Court ruled that the remedies provided under section 1797(b) of the MVFRL were the only remedies permitted for first party medical claims. The court reasoned because the two statutes could not be reconciled, the specific remedies set forth at section 1797(b) should prevail over the more general remedy of bad faith damages under 42 Pa.C.S. §8371. This decision adheres to a fundamental rule of statutory construction, regarding statutory conflicts. 1 Pa.C.S. §1933. "If the conflict between the two provisions is irreconcilable the special provisions shall prevail and shall be construed as an exception to the general provision [of giving effect to both when possible]." *Id.* at 495, 635 A.2d at 158. See also, *Elliott v. State Farm Mutual Automobile Insurance Co.,* 786 F. Supp. 487, 492-93 (E.D. Pa. 1992) (holding that the particularized remedies of section 1797 are alone applicable to claims for first party benefits under the MVFRL).

The *Barnum* court also ruled that an insured or health care provider must request reconsideration of a PRO decision before seeking judicial review. However, in a later decision, *Terminato v. Pennsylvania National Insurance Co.,* 538 Pa. 60, 645 A.2d 1287 (1994), the Pennsylvania Supreme Court held that an insured does not have to seek reconsideration of an adverse PRO decision before initiating an action in court. *Id.* at 71, 645 A.2d at 1293. Thus, the Supreme Court remanded the *Barnum* case to the trial court for proceedings consistent with its holding in *Terminato. Barnum* was reversed only on the issue of the necessity for seeking

reconsideration before filing a court action and remains the controlling precedent on the issue of extracontractual relief under the MVFRL.

Plaintiff's claim for bad faith is also flawed on the ground that it violates the United States District Court for the Eastern District of Pennsylvania's order in *Brownell v. State Farm Mutual Insurance Co.,* 757 F. Supp. 526 (E.D. Pa. 1991), which precludes any member of the *Brownell* class action from bringing a claim for bad faith against State Farm. The *Brownell* class consisted of all persons, "from February 24, 1984 to May 4, 1993 . . . insured by a State Farm motor vehicle registered in Pennsylvania, and/or including any person who submitted a medical payment coverage claim to State Farm for injuries arising out of the use, operation or maintenance of a motor vehicle in Pennsylvania." Ms. Kuropatwa's application for first party benefits was submitted in May of 1991, making her a member of the *Brownell* class. Plaintiff never opted out of the class and is now bound by the order and is precluded from bringing this claim for bad faith.

Finally, in conjunction with her allegations that State Farm acted unreasonably, plaintiff is seeking attorney's fees pursuant to section 1798 of the MVFRL. However, when an insurer uses the peer review process in good faith, it cannot be required to pay attorney's fees. *Moran v. State Farm Insurance Co.,* no. 95-50-05150-01, slip op. at 4 (Pa. C.P. York Co. April 13, 1995).

Although the *Barnum* court addressed the issue of bad faith damages pursuant to 42 Pa.C.S. §8371, and not attorney's fees under section 1716 and section 1798 of the MVFRL, the *Moran* court found the *Barnum* decision instructive in dismissing plaintiff's claim for attorney's fees. The court stated:

"While *Barnum* is not directly on point, it is however still instructive. *Barnum* teaches that where the insurer

uses the peer review process in good faith, it can no longer be determined to have acted unreasonably. A recovery for attorney's fees under section 1716 and section 1798 requires that the insurance company act unreasonably. If the insurance company is deemed to have acted reasonably in regard to a claim for treble damages, then it logically follows that the same result should be reached regarding a claim for attorney's fees." *Id.* at 3.

We agree. In the instant case, State Farm acted in accordance with section 1797(b) of the MVFRL. Plaintiff admits that State Farm timely utilized the peer review process. Plaintiff implies, however, by statistical analysis, that the PRO selected by State Farm has such a low percentile approval rate for initial determinations and reconsiderations that by utilizing this PRO State Farm has an "express and/or implied plan to intentionally cut off benefits. . . ."

This court does not view State Farm's utilization of the PRO process as wanton or fraudulent. Furthermore, both statutory and case law support defendant's reliance on the PRO process. Therefore, we appropriately granted the preliminary objections of State Farm Mutual Automobile Insurance Company and dismissed the complaint.